UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| COLTIN DREW HERZOG, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:25-CV-223-HAB-AZ |
| JOSHUA CARPENTER, | |
| Defendants. | |

OPINION AND ORDER

Coltin Drew Herzog, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

This case centers on whether Herzog, a pretrial detainee at the DeKalb County Jail, is receiving a constitutionally adequate diet that accommodates his sensory processing disorder, which he says prevents him from eating food with certain textures. Herzog alleges that he has been diagnosed with autism, and ever since he was a child, there were certain foods that he could not eat. He provides evidence that the last time he was in the Dekalb County Jail in 2022, he was allowed to drink Ensure as a

supplement to his meals, as long as his family provided the drinks. He also provides evidence that after his release from a prior prison sentence, his healthcare provider outside of prison prescribed him Ensure. But he filed this lawsuit because he has been repeatedly rebuffed every time he has asked to be prescribed Ensure since his admission to the DeKalb County Jail on May 23, 2024.

Herzog submitted portions of his medical records. ECF 19-1. Those records show that after he requested a prescription for Ensure, the jail's medical provider, Nurse Practitioner Chantel Spohr, began monitoring his weight to determine whether Ensure was medically necessary. When Herzog entered the jail on May 23, 2024, he weighed 134 pounds, and his weight fluctuated over time. At first, Herzog was weighed weekly to closely monitor his weight. But that later decreased to monthly weight checks. NP Spohr consistently determined that Ensures were not medically necessary because Herzog's weight was in a healthy range and he had even gained weight since entering the jail. The medical records Herzog provided show this information:

| 6/13/24 | 133 lbs. | ECF 19-1 at 16 |
| 6/24/24 | 141 lbs. | ECF 19-1 at 17 |
| 9/10/24 | 152 lbs. | ECF 19-1 at 18 |
| 9/20/24 | 158 lbs. | ECF 19-1 at 21 |
| 9/23/24 | 158 lbs. | ECF 19-1 at 22 |
| 10/25/24 | 162 lbs. | ECF 19-1 at 27 |

Pretrial detainees are entitled to constitutionally adequate medical care under the Fourteenth Amendment, which requires jail staff to take "reasonable available measures" to address a "risk of serious harm" to their health or safety. *Pittman v. Madison Cnty.*, 108 F.4th 561, 572 (7th Cir. 2024). Whether a defendant provided

reasonable care is determined by a purely objective standard. *Id.* First, the plaintiff must allege the defendant did a volitional act or made a deliberate choice not to act. *Id.* "[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015) (quotation marks omitted). Then, the reasonableness of that action or inaction is assessed based on whether "reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious." *Pittman*, 108 F.4th at 572 (emphasis omitted). Whether the defendant actually knew that her action or inaction would cause harm is irrelevant under the Fourteenth Amendment. *Id.* "Reasonableness, in turn, must be determined in light of the totality of the circumstances." *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020).

Herzog relies heavily on the fact that other medical providers have prescribed him Ensure in the past and argues, therefore, that it was unconstitutional for NP Spohr not to prescribe it to him also. However, other, non-specialist, medical providers' treatment decisions do not bind this medical provider, who is entitled to use her own medical judgment to determine the appropriate treatment for Herzog. *Cf. Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) ("There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field."). NP Spohr monitored Herzog's weight closely and concluded that Ensure was not necessary because Herzog was not underweight—a decision that is not objectively unreasonable under the circumstances.

Herzog added that, even though he was not underweight, he needed Ensure for the nutrients it provides to supplement his limited diet. But he provides no facts to support his assertion that he suffered from a nutrient deficiency. Based on the allegations in the complaint and the attached records, Herzog has not plausibly alleged that Chantel Spohr's decision not to place him on Ensure was objectively unreasonable.

Herzog maintains, however, that the only reason he was able to keep his weight up is because he was able to purchase food from Commissary to replace the food that he cannot eat. When he is in Disciplinary, Herzog continues, he loses access to Commissary and loses weight rapidly. As proof, he included his own handwritten log of his Disciplinary stays and his weights on various dates. For example, he alleges that he was in Disciplinary from August 28 through September 11, 2024, and over those two weeks his weight dropped just over six pounds, from 159 lbs. to 152.8 lbs. ECF 19-2 at 1. He was in Disciplinary again for just over six weeks, from December 9, 2024, through January 22, 2025, and his weight dropped six pounds. *Id.* at 2. His weight remained stable at 159 pounds for the week he spent in Disciplinary from February 20 through February 28, 2025. *Id.* But he dropped 11 pounds, from 158 lbs. to 147 lbs., over the six weeks he was in Disciplinary from April 2 through May 15, 2025. *Id.* His weight remained stable in the week and a half he was in Disciplinary from May 17 through May 28, 2025, fluctuating between 148 lbs. and 145 lbs., over that period, but ending at 148 pounds. *Id.* Finally, a week into a two-week Disciplinary stay, Herzog's weight dropped four pounds, from 150 lbs. to 146 lbs. *Id.*

4

"[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that 'amount to punishment.'" *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (citation omitted). Among other things, detainees are held in conditions that amount to punishment when they are not provided with "reasonably adequate" food to meet their nutritional needs. *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019). The weight changes Herzog logged might be nothing more than normal fluctuations in weight. Or the changes could be due to Herzog losing access to the food that he relied on to substitute for the foods he could not eat, as he alleges. Giving Herzog the inferences to which he is entitled at this stage, he has plausibly alleged that the diet he is provided at the DeKalb County Jail is not reasonably adequate to meet his nutritional needs in light of his medical condition that prevents him from eating the full variety of food offered to inmates.

Herzog narrowly focuses on needing Ensure to fill that gap, but there are other ways the jail might supplement Herzog's diet to make sure it provides adequate calories and nutrition. As discussed above, NP Spohr's decision not to prescribe Ensure was objectively reasonable, and there are no other allegations linking an individual defendant to decisions about his diet. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (personal involvement necessary for individual defendant to be held liable for damages under 42 U.S.C. § 1983). However, because Herzog has alleged a plausible ongoing constitutional violation, he may proceed on an injunctive-relief claim—which does not require a defendant's personal involvement—in order to obtain a constitutionally adequate diet as required by the Fourteenth Amendment. *See Verizon*

5

*Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (claim for injunctive relief requires "a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (quotation marks and brackets omitted)). As the Jail Commander, Joshua Carpenter has the authority and the responsibility to ensure that inmates at his facility are provided with a constitutionally adequate diet as required by the Fourteenth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, Herzog may proceed against Jail Commander Carpenter in his official capacity to obtain permanent injunctive relief to receive a constitutionally adequate diet.

Herzog also alleges that right after he filed a grievance against NP Spohr at the end of September 2025, NP Spohr "sporadically" took him off his Prozac and Remeron "for no reason." ECF 19 at 2. He asked Nurse Myranda Smith why he was taken off his meds, and she told him it was because his four-month evaluation was due. Herzog believes this was not the real reason because he was randomly taken off his medication another time after this. He says he missed his medication on September 22, 2024, and again on January 22, 2024. He sues NP Spohr and Nurse Smith for him missing his medication on these two occasions.

Two instances of missed medication over more than a year allows an inference of just negligence, not a Fourteenth Amendment violation. *See Pittman v. Madison Cnty.*, 108 F.4th 561, 567 (7th Cir. 2024) ("'*[N]egligently* inflicted harm,' . . . is 'categorically beneath the threshold of constitutional due process.'" (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015)). Herzog suggests that NP Spohr acted purposely because he

6

filed a grievance against her. But that is not a reasonable inference on the facts here. Nurse Smith explained that he was taken off his meds because his four-month evaluation was due, and this reason is supported by the fact that the two days he did not receive his medication fell exactly four months apart. Under these facts, it is not reasonable to infer that NP Spohr intentionally took him off his medication on those two days. Any negligence in not renewing his medication in a timely manner does not state a Fourteenth Amendment claim.

Additionally, in his amended complaint, Herzog adds unrelated claims against a new defendant, Nurse J. Gregory. He complains about the medical care Nurse Gregory is providing for a sore throat and allergies. Claims are related in a legal sense either if the same defendant is involved in each claim or if the claims all stem from the same transaction or occurrence and there is a common question of law or fact. FED. R. CIV. P. 18(a), 20(a)(2). Herzog's medical care from Nurse Gregory for a sore throat and allergies is unrelated to the medical care he received from NP Spohr regarding Ensures. This claim will be dismissed as improperly joined.

Herzog also names as a defendant Nurse Grace Ritchie, but she is not mentioned in the body of the complaint. She will be dismissed because there are no allegations connecting her to any wrongdoing.

Herzog is not proceeding in forma pauperis. Therefore, the court will not serve the defendant pursuant to 28 U.S.C. § 1915(d). Rather, it is Herzog's obligation to serve the defendant with a copy of the complaint, the attached exhibits, and this screening order as provided by Federal Rule of Civil Procedure 4.

Finally, Jail Commander Carpenter moves for the court to impose a filing bar on Herzog based on the nineteen cases he has filed in this court being a burden on the court's scarce resources. ECF 5. The Prisoner Litigation Reform Act has its own provision to deter frivolous or meritless cases filed by prisoners, *see* 28 U.S.C. § 1915(g), and it protects defendants from having to respond to frivolous or meritless prisoner lawsuits by requiring the court to screen a prisoner complaint for merit before a defendant has to respond, *see* 42 U.S.C. § 1997e(g)(2). Motions like this are just as draining on the court's resources as frivolous prisoner complaints. Regardless, Herzog has already been sanctioned in another case before this court for his excessive filings. He is prohibited under § 1915(g) from proceeding in forma pauperis in future cases because he has incurred more than three strikes for filing complaints that were dismissed for failure to state a claim. *See* ECF 6 (listing strikes). And, in *Herzog v. Burton*, No. 1:25-cv-252-PPS-APR (N.D. Ind. decided May 23, 2025), the court barred him from filing any new cases in this district until he has paid in full all outstanding fees and sanctions in all civil actions in federal court because he attempted to proceed in forma pauperis without disclosing that he had incurred three strikes. This case was filed before the filing bar was imposed, so it may still proceed. An additional ban on Herzog is unnecessary.

For these reasons, the court:

(1) DENIES the motion for filing bar (ECF 5);

(2) DISMISSES Nurse J. Gregory as improperly joined under Fed. R. Civ. P. 21;

(3) GRANTS Coltin Drew Herzog leave to proceed against Jail Commander Joshua Carpenter in his official capacity for permanent injunctive relief to receive a constitutionally adequate diet that accommodates his sensory processing disorder to the extent required by the Fourteenth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Chantell Spohr, Myranda Smith, and Grace Ritchie;

(6) DIRECTS the clerk to sign and seal summons for Joshua Carpenter and send it to Coltin Drew Herzog; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Jail Commander Joshua Carpenter to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 12, 2025.

s/ Holly A. Brady  
CHIEF JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT